[No. D056578. Fourth Dist., Div. One. Nov. 5, 2010.]

MICHAEL L. LEVINE et al., Plaintiffs and Appellants, v.
BLUE SHIELD OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Law Offices of Michael L. Levine and Michael L. Levine for Plaintiffs and Appellants.

Manatt, Phelps & Phillips, Brad W. Seiling, Joanna S. McCallum, Viral H. Mehta; Mazzarella Caldarelli and William J. Caldarelli for Defendant and Respondent.

**OPINION**

**AARON, J.—**

I.

INTRODUCTION

Michael L. Levine (Michael) and his wife Victoria Levine (Victoria) (collectively the Levines) filed this action on their own behalf, and on behalf of a putative class, against Blue Shield of California (Blue Shield). In five causes of action in their first amended complaint, the Levines brought claims for fraudulent concealment, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and unfair competition (Bus. & Prof. Code, § 17200 et seq.). All of the Levines' causes of action were based on their contention that Blue Shield had a duty to disclose to the Levines that their monthly health care premiums would have been lower if they had designated Victoria, rather than Michael, as the primary insured, and had added Michael's two minor dependents to a single-family plan, rather than having one dependent covered under a separate health care plan and the second dependent covered under a separate health insurance policy.

Blue Shield filed a joint demurrer and motion to strike the class action allegations in the Levines' complaint. In an accompanying brief, Blue Shield maintained that all of the Levines' claims failed because Blue Shield had no duty to disclose information concerning how the Levines could have structured their health coverage so as to lower their monthly health care premiums. Blue Shield also argued that the action could not proceed as a putative class action because Michael was improperly acting as both class counsel and as a class representative. The trial court sustained Blue Shield's demurrer to the complaint, without leave to amend. The court noted that its ruling on the demurrer rendered Blue Shield's motion moot, and proceeded to enter a judgment of dismissal.

On appeal, the Levines renew their contention that Blue Shield owed them a duty to disclose that they could have lowered their health care premiums by designating Victoria as the primary insured, and by including Michael's dependents on a single-family health plan.[1] We conclude that the Levines

---

[1] Specifically, the Levines claim the "Complaint seeks to compel Blue Shield to make full and individualized disclosure of crucial specific facts known only to Blue Shield, but routinely withheld from consumers: the actual and lower amounts Blue Shield is willing to accept from consumers for health care coverage."

have not demonstrated that Blue Shield owed them any such duty, and that the trial court therefore properly sustained Blue Shield's demurrer without leave to amend.[2]

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Levines' first amended complaint*

In October 2008, the Levines filed a first amended complaint against Blue Shield alleging five causes of action for fraudulent concealment, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and unfair competition (Bus. & Prof. Code, § 17200 et seq.).

The Levines alleged that in November 2004, Michael submitted an application to Blue Shield for an "Individual and Family Health Plan" for himself and two minor dependents. At the time he submitted the application, Michael was 40 years old and was unmarried. In December 2004, Blue Shield issued a health plan for Michael; a separate health plan for one of Michael's dependents; and a health insurance policy for the second of Michael's dependents.[3]

In July 2007, Michael married Victoria, who was then 25 years old. In August 2007, Victoria submitted an application to Blue Shield seeking to be added to Michael's health plan. In December 2007, Blue Shield added Victoria to Michael's health plan as a dependent. Michael remained the primary insured on the health plan.

With respect to Blue Shield adding Victoria to Michael's plan, the Levines alleged: "Blue Shield failed to inform Michael Levine that if Victoria Levine was named the primary insured or that if he were to purchase a family plan Michael Levine and Victoria Levine would save substantial sums of money, despite the fact that the risks to the insurer and the benefits to the insureds would remain exactly the same. The Blue Shield underwriting department set

---

[2] On appeal, the Levines also claim that the class allegations in their complaint should not be stricken. In light of our conclusion that the trial court properly sustained Blue Shield's demurrer without leave to amend, we need not consider the Levines' claim concerning the class allegations in the first amended complaint.

[3] With respect to their use of the terms "health plans" and "health insurance policies," the Levines stated that Blue Shield and its wholly owned subsidiary, Blue Shield of California Health and Life Insurance Company, jointly market both managed care health plans and health insurance policies.

the new premium for health coverage for Michael Levine and Victoria Levine and continued the children on individual policies at the higher rates."

The Levines claimed that Blue Shield knew that the Levines' rates would be lower if the Levines were to make those changes to their policies. The Levines alleged that "Blue Shield knew—based upon all of the medical information available regarding each of the insureds—what they were willing to accept in premiums to insure the identical risks in reverse," and that the Levines did not, and could not have, known this. The Levines asserted that neither "Michael Levine nor Victoria Levine knew, or in the exercise of reasonable diligence could have known that the premiums for the exact same coverage would have been approximately $500.00 less per month if Victoria Levine had been made the primary insured."

In August 2009, after Blue Shield raised the premiums for the Levines' health plans and policy by 30 percent, Michael contacted Blue Shield to inquire about his monthly premiums. After "extensive inquiry," Michael learned that the monthly premiums that he had been paying since adding Victoria to his plan would have been substantially lower if Victoria, rather than Michael, had been named as the primary insured, and if Michael had added his dependents to a single health plan rather than maintaining a separate health plan for one and a separate insurance policy for the other. Michael requested that effective September 1, 2009, Victoria be named as the primary insured, and that both of Michael's dependents be added to the Levines' family health plan. Michael also requested a refund of all "overpayments of premiums." Blue Shield refused to provide a refund.

The Levines filed a lawsuit against Blue Shield claiming fraudulent concealment. They alleged that Blue Shield failed to disclose to them that "the same benefits and coverage are available . . . for lesser premiums by designating a different party as the primary insured or adding minor dependents to a family plan." The Levines claimed that Blue Shield owed them a duty to disclose such information pursuant to Insurance Code section 332 (section 332).[4] In addition to the fraudulent concealment claim, the Levines brought claims for negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and unfair competition (Bus. & Prof. Code, § 17200 et seq.), based on the same alleged failure to disclose.

---

[4] Section 332 provides: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."

The Levines sought to bring this action as a class action on behalf of a proposed class, defined as follows: "[A]ll California residents who are currently insureds and former insureds since September 1, 2005 on Individual and Family Health Plans issued by Defendant Blue Shield and [who] were overcharged premiums due to Blue Shield's failure to inform them that the same coverage and benefits were available for lesser premiums by (1) designating a different spouse or domestic partner as the primary insured; or (2) covering each dependent under a family policy or plan."

## B. *Blue Shield's demurrer and motion to strike*

Blue Shield filed a demurrer to the Levines' first amended complaint. In its demurrer, Blue Shield contended that all of the Levines' claims failed because Blue Shield had no duty to disclose to the Levines that "their monthly premium payments could have been lowered if they (1) designated the younger spouse as the primary insured; *or* (2) converted to a family plan."

Blue Shield claimed that section 332 did not apply in this case because Blue Shield is a health plan regulated by the Department of Managed Health Care, not an insurance company regulated by the Department of Insurance, and that the Insurance Code applies only to insurance policies, not to health plans. In addition, Blue Shield "dispute[d] [the Levines'] interpretation of [s]ection 332," arguing that the "[Levines] theory would effectively turn Blue Shield into an insurance broker, acting on behalf of each of its members to advise them on how to maximize their health care dollars. No authority supports such an expansion of Blue Shield's duties and obligations." In the alternative, Blue Shield contended that it had provided the Levines with the information that the Levines claimed it had concealed, noting that the following notice was printed on Victoria's application: "Indicating the younger spouse/domestic partner as the primary applicant may reduce your monthly dues/payments."[5]

In its motion to strike, Blue Shield requested that the trial court strike the class allegations in the complaint on the ground that Michael could not act as both class counsel and as a class representative.

---

[5] In support of its demurrer, Blue Shield requested that the trial court take judicial notice of a redacted copy of Victoria's application. The Levines opposed Blue Shield's request. The trial court denied Blue Shield's request for judicial notice. On appeal, Blue Shield has filed a new motion for judicial notice, requesting that this court take judicial notice of the application. The Levines filed a notice of nonopposition to Blue Shield's request. We grant Blue Shield's request, and take judicial notice of the redacted copy of Victoria's application that is contained in the record.

In their opposition, the Levines argued that the substantive provisions of the Insurance Code, including section 332, applied to Blue Shield, even if Blue Shield was subject to the regulatory jurisdiction of the Department of Managed Health Care. The Levines argued that, pursuant to section 332, Blue Shield had a duty to disclose "the existence or amount of overcharges which could be avoided merely by (1) designating a different spouse or partner as the primary insured; or (2) covering any or all dependents under a single-family plan."

The Levines also argued that the notice contained in Victoria's application—which stated, "Indicating the younger spouse/domestic partner as the primary applicant may reduce your monthly dues/payments."—did not satisfy Blue Shield's duty of disclosure. Among other arguments, the Levines noted that the statement was contained in the application, but that the amount of savings in premiums that they could achieve if they were to change the designation of the primary insured would not be known until much later in the process, after underwriting was complete.[6]

Finally, the Levines argued that Blue Shield's motion to strike the class allegations was premature, and stated that they would substitute in unaffiliated counsel to avoid any challenge to their adequacy as class representatives.

## C. The trial court's ruling and the Levines' appeal

After a hearing, the trial court sustained Blue Shield's demurrer without leave to amend. The court reasoned in relevant part: "Inasmuch as the existence of a duty of disclosure is a fundamental element of each of the first . . . three causes of action [fraudulent concealment, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing], as well as the fifth [unfair competition], and inasmuch as plaintiffs cannot allege a statutory duty under . . . section 332 or a common law duty under the case law . . . , all [of] these causes of action are subject to demurrer." The court sustained Blue Shield's demurrer to the Levines' unjust enrichment claim, ruling that the cause of action "alleging unjust enrichment is not a recognized [cause of action] in California, but a remedy." The trial court also ruled that "[t]he disposition of the demurrer makes the motion to strike [the class allegations] moot." In the alternative, the court ruled that it would strike the class allegations of the complaint because Michael could not act as both class counsel and as a class member or class representative.

---

[6] In their opposition to Blue Shield's demurrer, the Levines stated that they did not oppose the demurrer to their cause of action for breach of the implied covenant of good faith and fair dealing.

The trial court entered a judgment of dismissal. The Levines timely appealed from the judgment.

### III.

### DISCUSSION

*The trial court properly sustained Blue Shield's demurrer without leave to amend*

The Levines claim that the trial court erred in sustaining Blue Shield's demurrer without leave to amend. The Levines contend that their first amended complaint properly states a cause of action for fraudulent concealment, negligent misrepresentation, unfair competition and unjust enrichment.

A. *The law governing demurrers*

This court applies the following well-established law in reviewing a trial court's order sustaining a demurrer without leave to amend: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

B. *The trial court did not err in sustaining Blue Shield's demurrer to the Levines' fraudulent concealment claim*

The Levines contend that the first amended complaint properly states a cause of action for fraudulent concealment. We disagree.

1. *The elements of the tort of fraudulent concealment*

"[T]he elements of a cause of action for fraud based on concealment are: ' "(1) the defendant must have concealed or suppressed a material fact, (2) *the defendant must have been under a duty to disclose the fact to the plaintiff*, (3) the defendant must have intentionally concealed or suppressed

the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. [Citation.]" [Citation.]' [Citation.]" (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 850 [100 Cal.Rptr.3d 637], italics added.)

> 2. *Blue Shield did not owe the Levines a common law duty to disclose how they could have structured their health plan so as to lower their health care premiums*

The Levines maintain that Blue Shield was required to inform them that their monthly health care premiums would be lower if the Levines designated Victoria, rather than Michael, as the primary insured, and if they added Michael's two minor dependents to a single-family plan, rather than maintaining a separate plan for one dependent and a separate insurance policy for the other. In other words, the Levines claim that Blue Shield was required to disclose to them the lowest price that Blue Shield was willing to accept for the particular health care coverage that the Levines requested.[7]

In support of their contention, the Levines maintain that Blue Shield, as an issuer of managed health care plans, is subject to the same standards of good faith and fair dealing as a health insurer. Assuming, without deciding, that this is correct, the Levines fail to cite any case in which a court has concluded that the covenant of good faith and fair dealing requires an insurer to disclose to a purchaser of insurance the lowest price that the insurer is willing to accept for insurance coverage. In fact, the California authority that is most on point is to the contrary.

The court in *California Service Station etc. Assn. v. American Home Assurance Co.* (1998) 62 Cal.App.4th 1166 [73 Cal.Rptr.2d 182] (*California Service Station*) rejected the contention that "an insurer owes a duty to disclose information about premium pricing to potential policyholders . . . ." (*Id.* at p. 1173.)[8] In *California Service Station*, an industry association negotiated an agreement with an insurer to provide dividend-paying workers' compensation insurance policies to the association's members. (*California Service Station, supra,* 62 Cal.App.4th at p. 1170.) During the negotiations, the insurer described the factors that it had used in the past and that it would

---

[7] As stated in their brief, Blue Shield allegedly owed the Levines a duty to reveal "the actual amount of premiums Blue Shield is willing to accept for health care coverage."

[8] Neither party cited *California Service Station* in its brief on appeal. This court requested that the parties submit supplemental briefs concerning the relevance, if any, of *California Service Station* to the issues in this appeal. The parties filed supplemental briefs in response to our request.

likely use in the future to calculate the dividends. (*Ibid.*) However, the insurer did not provide the association with written disclosure of the factors. (*Ibid.*) More than 18 months after the parties had entered into their agreement, the association learned that the insurer had calculated the dividends in a manner that did not comport with the association's expectations. (*Ibid.*) The association sued the insurer, alleging negligence, among other causes of action.[9] (*California Service Station, supra*, 62 Cal.App.4th at p. 1170.) After a jury awarded the association damages on its negligence claim, the trial court granted the insurer's motion for judgment notwithstanding the verdict. (*Id.* at pp. 1170–1171.) The association appealed. (*Id.* at p. 1171.)

On appeal, the *California Service Station* court considered whether the insurer owed the association a duty to disclose information concerning how the insurer would determine the final price of the insurance policies—i.e., the price of policy premiums offset by the insurer's payment of dividends. (*California Service Station, supra*, 62 Cal.App.4th at p. 1173.) The *California Service Station* court rejected the contention that the insurer owed the association such a duty, reasoning:

"Neither the Legislature nor the courts have created a duty of care requiring the disclosure of dividend calculation information during arm's-length negotiations for insurance contracts. Appellants claim respondent is liable because it did not disclose past dividend calculations when it agreed to underwrite workers' compensation policies appellants intended to market to their membership. The dividend calculations relate only to the final price of the policies, and have no bearing on the coverage provided. Therefore, appellants essentially assert that an insurer owes a duty to disclose information about premium pricing to potential policyholders, and is negligent if it fails to adequately disclose.

■ "There is no duty of ordinary care to disclose pricing information during arm's-length contract negotiations. If a purchaser wishes to go forward without final agreement on pricing structure, the purchaser takes the risk that the final negotiated price may be higher than expected. There is also no special duty in the relationship between an insurer and a potential insured. The relationship between an insurer and a prospective insured is not a fiduciary relationship. '[A]n insured person's initial decision to obtain insurance and the corresponding decision of an insurer to offer coverage remain, at

---

[9] Two subsidiaries of the association also were named plaintiffs in the action. (*California Service Station, supra*, 62 Cal.App.4th at p. 1169.) Since the distinctions among these entities are not relevant for the present appeal, we refer to the association and its subsidiaries as "the association," for ease of reference.

the inception of the contract at least, an arm's length transaction to be governed by traditional standards of freedom to contract.' [Citation.]" (*California Service Station, supra,* 62 Cal.App.4th at p. 1173.)

The *California Service Station* court also noted the lack of any case law "establish[ing] a special duty applicable to an insurer negotiating the price of an insurance contract." (*California Service Station, supra,* 62 Cal.App.4th at p. 1173.) The *California Service Station* court acknowledged that an insurer owes its insureds a duty concerning "representations about the *coverage* created by an insurance policy," but went on to explain that this duty "should be distinguished from a duty to disclose information about the calculation of premiums." (*Id.* at p. 1174, italics added.) In summarizing its rationale for affirming the trial court's judgment in favor of the insurer, the *California Service Station* court stated, "[T]he only failure to disclose concerned the manner of calculating the premiums, and that should be the subject of negotiation unaided by an obligation of disclosure of information that appellants could have obtained before entering into the agreements." (*Id.* at pp. 1174–1175.)

■ We agree with the *California Service Station* court that an insurer does not owe a purchaser of insurance any "special duty" in "negotiating the price of an insurance contract." (*California Service Station, supra,* 62 Cal.App.4th at p. 1173.)[10] We also agree that a person's initial decision to obtain insurance and an insurer's decision to offer coverage generally should be governed by traditional standards of freedom to contract. More specifically, we are aware of no common law authority, and the Levines have cited none, that would support the proposition that a court may order an insurer to disclose the lowest price that the insurer is willing to accept in exchange for providing coverage. (See *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 939 [16 Cal.Rptr.3d 849, 94 P.3d 1055] (*Jonathan Neil & Associates*) ["[G]enerally speaking, the insurer's ability to charge excessive premiums will be disciplined by competition among insurers."].) Moreover, we can conceive of no principled basis for concluding that Blue Shield owed the Levines a duty to disclose how the Levines could obtain the same health care coverage for a lower price, in view of the *California Service Station* court's holding that the insurer did not owe a duty to disclose the "final negotiated price" itself. (*California Service Station, supra,* 62 Cal.App.4th at p. 1173.)[11]

---

[10] As with the plaintiffs in *California Service Station,* the Levines do not claim that Blue Shield breached any duty related to the disclosure of information pertaining to coverage.

[11] The Levines have not alleged that Blue Shield failed to disclose the price of the health care plans and insurance policy that the Levines purchased.

The Levines' attempt to distinguish *California Service Station* in their supplemental briefing is not persuasive. The Levines note that the *California Service Station* court stated that the appellants in that case had not pursued claims for fraud, deceit, or misrepresentation, while in this case, the Levines *are* pursuing fraud-related causes of action. Under the circumstances of this case, this distinction is irrelevant. The *California Service Station* court's limitation of its holding in this respect was based on the premise that affirmative misrepresentations, which could potentially serve as the basis for a fraud-related cause of action, were irrelevant to the negligence cause of action at issue in that case: "Appellants' theory of simple negligence is based in part on theories of recovery appellants have chosen not to pursue. For example, they argue that respondent had a duty 'not to make misleading or incomplete statements,' and refer to respondent's broken 'promises,' 'statements' and 'repeated assurances,' in essence claiming they were deceived or misled by respondent's failure to provide a dividend statement during contract negotiations. To the extent respondent may have broken any 'promises' or violated any material 'statements' or 'repeated assurances,' these assertions concern causes of action for breach of contract which are not before us, or fraud, deceit or intentional or negligent misrepresentation, which were never pursued by appellants. In fact, appellants *actively disavowed* any fraud, deceit or misrepresentation causes of action when pressed by respondent. . . . This leaves appellants with the contention that an insurer has an independent duty during arm's-length negotiations for dividend-paying insurance coverage, to disclose the factors upon which the dividends are calculated." (*California Service Station, supra,* 62 Cal.App.4th at p. 1172, citations omitted.)

In this case, the Levines' fraud-related claims are not based on "broken 'promises,' " or a violation of any "material 'statements.' " (*California Service Station, supra,* 62 Cal.App.4th at p. 1172.) Rather, these claims are based on Blue Shield's alleged failure to disclose how the Levines could have lowered their premiums by structuring their health coverage differently. Since the insurer's failure to disclose "information about premium pricing to potential policyholders" did not give rise to a negligence cause of action in *California Service Station,* we see no basis for concluding that Blue Shield's failure to disclose information about the premium pricing of another possible policy— i.e., one that named Victoria as the primary insured and added Michael's dependents—gives rise to the Levines' fraud-related claims in this case. (*Id.* at p. 1173.)

The Levines also argue that *California Service Station* is distinguishable from the present case because, unlike the parties in that case, "there is an existing 'special relationship' between [the Levines] and Blue Shield and the parties are not at 'arms-length.' " In support of this contention, the Levines

cite *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136 [271 Cal.Rptr. 246] (*Love*), and point to three facts that they claim demonstrate the existence of a special relationship between the Levines and Blue Shield. Specifically, the Levines note that by the time Blue Shield added Victoria to Michael's health plan, Michael had an existing Blue Shield health plan, Blue Shield had access to the Levines' health history, and Michael had submitted an automatic payment authorization form that allowed Blue Shield to automatically deduct the premiums for Victoria's coverage from Michael's bank account.

■ In our view, rather than supporting the Levines' claim, *Love* demonstrates why none of these facts required Blue Shield to disclose to the Levines that they could lower their premiums if they were to structure their health coverage differently. In *Love*, the insureds claimed that an insurer had an obligation to disclose to them an "alternative legal theory of coverage" by which they could have avoided the applicability of an exclusion in their homeowner's policy. (*Love, supra*, 221 Cal.App.3d at p. 1144.) The Loves claimed that this duty of disclosure arose from the fiduciary obligation that an insurer owes to its insureds. (*Id.* at p. 1146.) The *Love* court rejected this claim, reasoning that an insurer does not stand in a true fiduciary relationship with an insured (*id.* at p. 1147), and that courts have imposed "special obligations" on insurers only where those obligations foster the unique purposes of an insurance contract, namely, bringing an insured peace of mind and security from loss. (*Id.* at p. 1148 ["Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims."].)

■ The Levines have not demonstrated that any of the elements of their purported special relationship with Blue Shield are related to the duties that they claim Blue Shield owed them as purchasers of a health plan or health insurance. The amount of money that an insurer is willing to accept in exchange for coverage is not information that implicates the special relationship between an insurer and its insured, because it does not relate to coverage or the processing of claims. (See *Love, supra*, 221 Cal.App.3d at p. 1148; accord, *Jonathan Neil & Associates, supra*, 33 Cal.4th at pp. 940, 941 [concluding insureds could not pursue tort remedies against insurer where claim was not based in "special insurance relationship," since insureds "were not denied the benefits of the insurance policy, [and] were not required to prosecute the insurer to vindicate their contractual rights"].) We therefore reject the Levines' contention that the purported "special relationship" (*Love,* at p. 1147) between the Levines and Blue Shield gives rise to a duty of disclosure in this case. (See also *id.* at p. 1154 (conc. opn. of Wiener, J.)

[stating that whether an insurer should be subject to a duty of disclosure should not be determined by whether an insurer can be characterized as a fiduciary, but rather by a "thoughtful analysis of whether the circumstances of a particular case justify the imposition of enhanced duties on the insurer"].)

We do not read *California Service Station* as suggesting that the court in that case drew any distinction with respect to an insurer's duties depending upon whether the purchasers of insurance were becoming insureds for the first time, or instead, were already insureds under another policy. Rather, the *California Service Station* court emphasized that an insurer's negotiation of an insurance contract is not the type of transaction that would give rise to heightened duties of disclosure concerning price. (*California Service Station, supra*, 62 Cal.App.4th at p. 1173.) In fact, the *California Service Station* court noted that an insurer has no special common law duties as to a purchaser of insurance concerning the calculation of premiums, whether the purchaser is a potential insured or an insured. (See *ibid.* ["There is also no special duty in the relationship between an insurer and a *potential insured*." (italics added)]; *id.* at p. 1174 [stating that while the "relationship between an insurer and its *insured*" gives rise to a duty "involv[ing] representations about the coverage created by an insurance policy, . . . that duty should be distinguished from a duty to disclose information about the calculation of premiums" (italics added)].) Therefore, the fact that Michael had an existing health plan with Blue Shield at the time Victoria submitted her application for coverage is not a meaningful basis on which to distinguish *California Service Station*.

Finally, none of the cases that the Levines cite in support of the common law duty that they assert involve the scope of an insurer's duty to disclose information pertaining to the price that the insurer is willing to accept for coverage. The Levines have not cited a single case in which a court has concluded that an insurer, or any other entity, has a duty to disclose to a purchaser of its goods or services the lowest price that the entity is willing to accept for those goods or services. (Cf. *Ex parte Ford Motor Credit Co.* (Ala. 1997) 717 So.2d 781, 787 ["We decline to recognize a common law duty that would require the seller of a good or service, absent special circumstances, to reveal to its purchaser a detailed breakdown of how the seller derived the sales price of the good or service, including the amount of profit to be earned on the sale."]; *Cirzoveto v. AIG Annuity Ins. Co.* (W.D.Tenn. 2009) 625 F.Supp.2d 623, 631 ["The Court finds that Defendant had no duty to disclose its internal ratemaking and pricing procedures related to the annuity. Plaintiff's fraudulent concealment claim, therefore, fails as a matter of law."].)

In sum, we are aware of no authority that would support the proposition that an entity, whether a provider of health care plans or an insurer, is under a common law duty to disclose the lowest price that it is willing to accept in exchange for providing health care coverage. Accordingly, we conclude that Blue Shield did not owe the Levines a common law duty to disclose how they could have structured their health coverage so as to lower their health care premiums.

### 3. *Blue Shield did not owe the Levines a statutory duty to disclose how they could have lowered their health care premiums*

In addition to claiming that Blue Shield had a common law duty of disclosure, the Levines contend that Blue Shield was subject to a statutory duty of disclosure pursuant to section 332. Specifically, the Levines contend that section 332 required Blue Shield to inform the Levines that their monthly health care premiums would be lower if the Levines designated Victoria, rather than Michael, as the primary insured, and added Michael's two minor dependents to a single-family plan rather than maintaining a separate plan for one dependent and a separate insurance policy for the other. Blue Shield contends that section 332 does not apply because Blue Shield is a health care service plan, not an insurance company. Blue Shield also contends, "[E]ven if [s]ection 332 did apply to Blue Shield, it is highly questionable whether it would require Blue Shield to disclose health care service plan pricing options." Assuming, only for purposes of this opinion, that section 332 applies to Blue Shield, we conclude that this provision would not require Blue Shield to disclose to the Levines how they could have lowered their monthly health care premiums.[12]

Section 332 provides: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."

Despite the fact that this statute has been in existence for more than 135 years,[13] the Levines have not cited a single case in which a court has concluded that section 332 requires an insurer to inform a purchaser of

---

[12] The Levines and Blue Shield have both requested that we take judicial notice of portions of the legislative history of provisions in the Insurance Code, in support of their competing contentions concerning whether the Insurance Code applies to Blue Shield. Because we have assumed, for purposes of this opinion, that the Insurance Code applies to Blue Shield—an assumption we make strictly for purposes of resolving this appeal—we deny the requests for judicial notice as moot.

[13] The text of Insurance Code section 332 was originally enacted by the Legislature in 1872 as Civil Code former section 2563.

insurance that the insurer would be willing to provide the coverage in question at a lower premium than the premium initially quoted, if the purchaser were to structure the coverage differently. We are loath to interpret a long-existing statute that does not expressly require such a disclosure in a manner that would impose a broad new duty that is in derogation of the common law. (See *In re Jeffrey M.* (2006) 141 Cal.App.4th 1017, 1027, fn. 5 [46 Cal.Rptr.3d 533] [statutes "in derogation of the common law rule . . . must be strictly construed"].)

■ Rather than requiring an insurer to disclose the "lower amounts [the insurer] is willing to accept from consumers for . . . coverage," as the Levines suggest, section 332 speaks in general terms about disclosure of facts that are "material to the contract." The Levines fail to explain how an insurer's purported duty to disclose the availability of *other* potential insurance contracts that would afford the same coverage constitutes information "material *to the contract*" within the meaning of section 332. (Italics added.) Instead, the Levines essentially rewrite the statute, arguing: "[W]here . . . Blue Shield is prepared to accept fifty percent lower premiums for the exact same policy[14] and coverage, such a reduction in premiums is . . . material to *the purchaser* of a health care plan or policy." (Italics added.) However, section 332 does not require the parties to an insurance contract to make available all information that may be material to the other *party*. Rather, it requires each party to make available information that is "material to the *contract*." (§ 332, italics added.)

The holding in *Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, 1492–1493 [6 Cal.Rptr.3d 148] (*Pastoria*), on which the Levines heavily rely, is not to the contrary. In *Pastoria*, the plaintiffs filed a putative class action lawsuit in which they alleged that two insurers had made amendments to the plaintiffs' insurance policies shortly after the plaintiffs purchased the policies. The plaintiffs alleged that at the time they purchased the policies, the insurers knew that they would be amending the policies in the near future. The *Pastoria* court agreed with the plaintiffs that, pursuant to various provisions of the Insurance Code, including section 332, the insurers "had a duty to disclose to plaintiffs that there were impending amendments to the policies changing premiums and benefits, even before the plaintiffs purchased their policies." (*Pastoria*, at p. 1496.)

■ *Pastoria* involved an insurer's duty to inform prospective policyholders about impending "amendments to *the policies*" that they were purchasing (*Pastoria, supra*, 112 Cal.App.4th at p. 1496, italics added), and is thus fully

---

[14] We observe that a policy that designated Victoria as the primary insured and added the two dependents would not be the "exact same policy" as the one that the Levines originally purchased.

consistent with our observation that section 332 requires disclosure of certain facts that are "material *to the contract*" (§ 332, italics added). In other words, *Pastoria* is distinguishable because the plaintiffs in that case maintained that the insurer had a duty to disclose a wholly different type of information than that which plaintiffs in this case claim Blue Shield should have disclosed. In *Pastoria*, the court concluded that the plaintiffs were entitled to disclosure of the *actual price* that the plaintiffs would have to pay for their policies. (*Pastoria*, at p. 1496.) In this case, in contrast, the Levines claim that Blue Shield was required to disclose a *hypothetical* price that Blue Shield would be willing to accept in order to provide coverage. *Azar v. Prudential Ins. Co. of America* (2003) 133 N.M. 669 [68 P.3d 909], which the Levines cite in their supplemental briefing, is distinguishable for the same reason. In *Azar*, the Court of Appeals of New Mexico considered whether an insurer adequately disclosed to policyholders the additional cost of paying their premiums in installments. (*Id.*, 68 P.3d at p. 918.) Disclosures concerning the actual amounts to be paid by a purchaser of insurance for such insurance are simply not analogous to disclosure of the lowest hypothetical price that an insurer would be willing to accept in exchange for providing coverage. In sum, neither *Pastoria*, nor any other case of which we are aware, suggests, much less holds, that section 332 requires an insurer to inform a purchaser of insurance of the availability of other potential insurance contracts that would afford the same coverage at a lower cost.[15]

We conclude that Blue Shield did not owe the Levines a common law duty to disclose how they could have structured their health coverage so as to lower their health care premiums. Because the Levines are unable to sufficiently allege the necessary element of duty, the trial court did not err in sustaining Blue Shield's demurrer to the Levines' fraudulent concealment claim.[16]

---

[15] The Levines' interpretation of section 332 would lead to absurd results. If, as the Levines contend, an insurer is under a statutory duty to disclose that it is willing to offer the same coverage at a lower cost in light of the reciprocal nature of section 332 (*Pastoria, supra*, 112 Cal.App.4th at p. 1499), a purchaser of insurance would have a corresponding duty to inform the insurer that it would be willing to purchase the same coverage at a higher cost. We decline to adopt such a bizarre and impractical interpretation of section 332. (See *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [64 Cal.Rptr.3d 661, 165 P.3d 462] [statutes should be interpreted to avoid "unreasonable, impractical, or arbitrary results"].)

[16] In light of our conclusion that Blue Shield did not owe the Levines a duty of disclosure, we need not consider whether we may affirm the judgment on the ground that Blue Shield met any such duty as a matter of law by including the following notice in Victoria's application: "Indicating the younger spouse/domestic partner as the primary applicant may reduce your monthly dues/payments."

C. *The trial court did not err in sustaining Blue Shield's demurrer to the Levines' negligent misrepresentation claim*

The Levines contend that the trial court erred in sustaining Blue Shield's demurrer to their negligent misrepresentation claim.

■ Among the fundamental elements of the tort of negligent misrepresentation is that the defendant has made a "misrepresentation." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255 [91 Cal.Rptr.3d 532, 203 P.3d 1127].) The Levines correctly note that the "misrepresentation" element of the tort of negligent misrepresentation may be established by showing "the suppression of fact by one *bound to disclose it*." (*Conte v. Wyeth, Inc.* (2008) 168 Cal.App.4th 89, 101, fn. 7 [85 Cal.Rptr.3d 299], italics added.)

The Levines acknowledge that their negligent misrepresentation claim is based upon the same alleged duty to disclose that they alleged in connection with their fraudulent concealment claim. For the reasons stated in part III.B., *ante*, we conclude that Blue Shield did not owe the Levines a duty to disclose the lower premiums that it was willing to accept in exchange for providing the Levines with the health care coverage that they desired. Accordingly, the trial court properly sustained Blue Shield's demurrer to the Levines' negligent misrepresentation claim.

D. *The trial court did not err in sustaining Blue Shield's demurrer to the Levines' unfair competition claim*

The Levines contend that the trial court erred in sustaining Blue Shield's demurrer to their unfair competition claim (Bus. & Prof. Code, § 17200).

■ In order to state a claim for a violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200), a plaintiff must allege that the defendant committed a business act that is either fraudulent, unlawful, or unfair. (See *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 986 [74 Cal.Rptr.3d 47] (*Buller*).) The Levines acknowledge that their claim that Blue Shield violated Business and Professions Code section 17200 is based upon the same purported duty to disclose that they alleged in connection with their fraudulent concealment claim. For the reasons stated in part III.B., *ante*, we conclude that Blue Shield did not owe the Levines a duty to disclose the lower premiums that it was willing to accept in exchange for providing the Levines with the health care coverage that they desired. Therefore, the Levines have not adequately stated a claim that Blue Shield committed a fraudulent business practice under the UCL. ■ (See *Buller*, at p. 987 [" 'Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.' "].)

In light of our rejection of the Levines' section 332 claim (see pt. III.B.2., *ante*), the Levines have provided no basis for concluding that Blue Shield's failure to disclose was unlawful. Finally, the Levines have not stated a claim under the unfairness prong of the UCL because they have not sufficiently alleged that Blue Shield's "conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law."[17] (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1366 [108 Cal.Rptr.3d 682] (*Durell*); see *Buller, supra,* 160 Cal.App.4th at pp. 987, 991–992 [concluding that hospital's failure to inform former patient of availability of "prompt-pay" discount did not constitute unfair practice under the UCL].)

Accordingly, we conclude that the trial court did not err in sustaining Blue Shield's demurrer to the Levines' unfair competition claim.

---

[17] In discussing their UCL claim, the Levines note that they have requested that this court take judicial notice of a consent agreement entered into between "Anthem Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue Shield ('Anthem')" and various officials of the Maine state government (the Consent Agreement). The Consent Agreement states in relevant part: "In a November 8, 2002 Decision and Order regarding Anthem's filing, the Superintendent [of the Maine Bureau of Insurance] changed the way rates are determined for contracts covering two adults (with or without children). The new method bases rates on the age of the primary policyholder only. Previously, the rates reflected the ages of both adults. Therefore, while it had previously made little difference which spouse was designated as primary insured, it is now advantageous for policyholders to designate the younger spouse as the primary insured. In order to make policyholders aware of this, the Superintendent provided, at Part V, P 3 of his November 2002 Decision and Order: [¶] 'Anthem . . . shall take vigilant measures to ensure that affected policyholders under mixed-age contracts are aware of their opportunity to make the younger spouse the policyholder . . . .' " The Consent Agreement also states that Anthem failed to provide the notice required in the November 2002 order.

Blue Shield opposes the Levines' request for judicial notice. In addition, Blue Shield requests that we take judicial notice of several additional documents in support of Blue Shield's contention that it "is an independent corporation, existing and organized under the laws of the State of California." The Levines, in turn, objected to Blue Shield's request for judicial notice.

The Levines have not demonstrated the relationship, if any, between Anthem and Blue Shield. Further, the Levines have not alleged, nor indicated that they could allege, that any of the circumstances that gave rise to the Consent Agreement exist in California. Specifically, the Levines have not alleged any facts concerning the manner by which Blue Shield's rates are regulated in California. Nor have the Levines alleged that a regulatory agency has directed Blue Shield to provide notice to policyholders concerning their opportunity to list the younger spouse as the primary policyholder. The Levines thus have not demonstrated that the Consent Agreement has any relevance to this action. Accordingly, we deny the Levines' request for judicial notice. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73] [stating that only relevant material may be judicially noticed], overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 [63 Cal.Rptr.3d 418, 163 P.3d 106].) We deny as moot Blue Shield's request for judicial notice filed in opposition to the Levines' request.

E. *The trial court did not err in sustaining Blue Shield's demurrer to the Levines' unjust enrichment claim*

The Levines contend that the trial court erred in sustaining Blue Shield's demurrer to their unjust enrichment claim.

 Although some California courts have suggested the existence of a separate cause of action for unjust enrichment (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1593 [80 Cal.Rptr.3d 316] [listing elements]), this court has recently held that " '[t]here is no cause of action in California for unjust enrichment.' [Citations.] Unjust enrichment is synonymous with restitution. [Citation.]" (*Durell, supra,* 183 Cal.App.4th at p. 1370.) Thus, the Levines' unjust enrichment claim does not properly state a cause of action.

In any event, while the Levines contend that it was unjust for Blue Shield to retain premiums collected through "fraud, negligent misrepresentation, and violation of California's UCL," we have concluded that the trial court properly sustained Blue Shield's demurrer to the Levines' claims for fraudulent concealment, negligent misrepresentation, and unfair competition. (See pt. III.B., C., D., *ante.*) The Levines thus have not demonstrated any basis on which they would be entitled to restitution pursuant to a theory of unjust enrichment.

Accordingly, we conclude that the trial court properly sustained Blue Shield's demurrer to the Levine's unjust enrichment claim.

F. *The Levines have not demonstrated that they could amend their complaint to properly state a cause of action*

In their opening brief, the Levines contend that they could have amended their complaint to allege additional facts pertaining to two issues in this case. Specifically, the Levines contend that they could have amended their complaint to allege additional facts concerning whether section 332 applies in this case, and whether the notice on Blue Shield's application contained sufficient information pertaining to the mechanics of how and when a person could identify the younger spouse as the primary insured. The Levines' proposed amendments would not cure the defects in their complaint outlined above. (See pt. III.B., C., D., E., *ante.*) In particular, the Levines have not demonstrated that they could allege that Blue Shield owed them a duty, which is essential to all of their causes of action. Accordingly, we conclude that the trial court did not abuse its discretion in sustaining Blue Shield's demurrer without leave to amend. (See *Buller, supra,* 160 Cal.App.4th at p. 992.)

## IV.

## DISPOSITION

The judgment is affirmed. Blue Shield is entitled to costs on appeal.

Benke, Acting P. J., and O'Rourke, J., concurred.

A petition for a rehearing was denied November 30, 2010, and appellants' petition for review by the Supreme Court was denied February 16, 2011, S188988.