Filed 9/2/15  Goldenpark v. Urban Commons CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| GOLDENPARK, LLC,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>URBAN COMMONS, LLC et al.,<br><br>        Defendants and Respondents. | B257597<br><br>(Los Angeles County<br>Super. Ct. No. VC063314) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Roger Ito, Judge.  Affirmed.

Geragos & Geragos, Mark J. Geragos, Ben J. Meiselas, Greg L. Kirakosian, and Tyler M. Ross; Johnny Kim for Plaintiff and Appellant.

Jeffer Mangels Butler & Mitchell, Jon A. Weininger and Andrew I. Shadoff for Defendants and Respondents.

Plaintiff and appellant Goldenpark, LLC (Goldenpark) appeals from the judgment entered in favor of defendants and respondents Urban Commons, LLC (Urban) and Urban Commons Sycamore, LLC (UCS)[1] after the trial court sustained, without leave to amend, defendants' demurrer to Goldenpark's second amended complaint (SAC). We affirm the judgment.

## BACKGROUND

**The loans**

In February 2008, Goldenpark obtained a loan from Wilshire State Bank (WSB) in the principal amount of $16.9 million (Loan 1). Loan 1 was evidenced by a business loan agreement, promissory note (Note 1), deed of trust, and commercial security agreement, and was secured by certain commercial real property operated as a hotel (the hotel).

In April 2008, Goldenpark obtained from WSB a second loan in the principal amount of $1.3 million (Loan 2). Loan 2, like Loan 1, was secured by the hotel and was evidenced by a business loan agreement, promissory note (Note 2), deed of trust, and commercial security agreement.

Loan1 required Goldenpark to make monthly payments "with interest calculated on the unpaid principal balances at an interest rate of 6.750%." The interest rate on Loan 2 was 7.00 percent and was calculated the same way.

Both loans defined an "Event of Default" to include Goldenpark's "fail[ure] to make any payment when due under the Loan." An Event of Default entitled the lender, "without notice of any kind to Borrower," to accelerate all payments due under the loan and to exercise various other remedies, including foreclosing on the hotel. A default also triggered a five percent increase in the rate of interest.

Both loans contained non-waiver provisions that prevented any loss of lender rights through alleged inaction or course of dealing. The loans further provided that they could be sold or transferred without notice to or consent by Goldenpark.

---

**1**    Urban and UCS are referred to collectively as defendants.

**Loan modifications**

From March 2008 to December 2010, Goldenpark made virtually all of its loan payments after their applicable due dates. In addition, Goldenpark failed to fulfill other obligations owed under the loans, including timely payment of property taxes and franchise fees.

On September 29, 2010, Goldenpark and WSB entered into two separate agreements to modify the terms of the loans. The modification agreements allowed Goldenpark to make three reduced monthly payments for each loan.

The modification agreement for Loan 1 (Modification 1) described Goldenpark's "existing indebtedness" as including an outstanding principal balance of $16,153,192.23 and stated that, as of September 29, 2010, interest had been paid through July 25, 2010. Modification 1 changed the monthly payment due under Note 1 from $117,797.43 to $55,000 for three months, from August 2010 to October 2010. The first reduced monthly payment was due on August 25, 2010.

The modification agreement for Loan 2 (Modification 2) stated that interest had been paid on Loan 2 to July 21, 2010, and provided for three reduced monthly payments to be made on the same August 2010 to October 2010 schedule specified in Modification 1. Both Modifications 1 and 2 contained a provision whereby Goldenpark released WSB and its successors from any claims related to the loans arising out of events occurring before September 29, 2010.

**UCS's purchase of the loans**

On October 26, 2010, UCS and WSB entered into an agreement pursuant to which UCS purchased the loans. The agreement stated that as of October 26, 2010, interest on both loans had been paid only to mid-August 2010.

**Goldenpark's default and UCS's acceleration of the loans**

On December 27, 2010, Goldenpark asked WSB to accept a reduced monthly payment of $55,000 for two more months, for December 2010 and January 2011. WSB did not respond to that request, but Goldenpark nevertheless tendered a fourth reduced payment of $55,000.

On January 10, 2011, UCS accelerated the payments due under both loans and recorded notices of default specifying an amount of $411,516.83 in default under Loan 1 and $34,295.21 in default under Loan 2. On January 25, 2011, in response to an inquiry by Goldenpark, UCS explained how it calculated the amounts in the notices of default.

**Goldenpark's bankruptcy and UCS's nonjudicial foreclosure**

In May 2011, Goldenpark filed a voluntary Chapter 11 bankruptcy petition. In the bankruptcy proceeding, Goldenpark filed declarations by its managing member, Dae In Kim, acknowledging that under Modification 1, Goldenpark "was required to make three consecutive monthly payments in the amount of $55,000 beginning August 25, 2010" and admitting that "[Goldenpark] defaulted under [Modification 1] . . . in the end of November 2010 because [Goldenpark] only paid $55,000 as opposed to the $121,188.74 that was due."

On February 3, 2012, the bankruptcy court dismissed Goldenpark's Chapter 11 petition, and three days later, Goldenpark filed a second bankruptcy petition. UCS obtained relief from the automatic stay and commenced a nonjudicial foreclosure proceeding. Goldenpark unsuccessfully sought to obtain a temporary restraining order against the foreclosure sale, and UCS foreclosed on the hotel on July 13, 2012.

## PROCEDURAL HISTORY

**Initial complaint and first amended complaint**

Goldenpark commenced this action in July 2013, alleging causes of action for breach of the implied covenant of good faith and fair dealing, fraud, fraudulent concealment, tortious interference with prospective economic advantage, conversion, violation of Business and Professions Code section 17200 (also known as the Unfair Competition Law, or UCL), and violation of Civil Code section 2924c. Goldenpark sought to set aside the foreclosure, recover the hotel, and obtain $10 million in damages.

Defendants demurred on various grounds, including that Goldenpark failed to allege that it had tendered payment of the amounts due under the loans, a necessary element for both the statutory and common law wrongful foreclosure claims; that the loan agreements expressly authorized UCS's actions; and that the claims were barred by the

4

doctrine of judicial estoppel. Goldenpark responded by filing a first amended complaint (FAC) that alleged the same claims based on nearly identical factual allegations.

The FAC included a summary of Goldenpark's alleged payment history on Loan 1. That summary revealed that Goldenpark had made only a partial payment in March 2009. The summary also showed that Goldenpark did not make up the shortfall resulting from the March 2009 underpayment in any subsequent monthly payments.

Defendants filed a second demurrer, which the trial court sustained with partial leave to amend. The court dismissed the causes of action for violation of Civil Code section 2924c and to set aside the foreclosure sale on the ground that Goldenpark had not alleged tender of either the amount in default or the amount due under the loans. The trial court also dismissed, without leave to amend, the claims for fraudulent concealment, intentional interference with prospective economic advantage, and conversion. The court granted Goldenpark leave to amend its claims for fraud, breach of the implied covenant of good faith and fair dealing, and violation of the UCL.

**The SAC**

Goldenpark filed a SAC, alleging only two causes of action for breach of the implied covenant of good faith and fair dealing and for violation of the UCL. Defendants again demurred and filed a motion to strike. The trial court sustained the demurrer without leave to amend, concluding that Goldenpark was in default under the loans because it had made four reduced modified payments instead of three and failed to make the March 2009 payment; Goldenpark had failed to allege tender of the amount owed under the loans; UCS was entitled to accelerate the debt, so that the entire amount owed under the loans was due; Goldenpark failed to establish that the interest charged on the loans caused it any damage; Goldenpark had been given the opportunity to amend to correct its defects in pleading and failed to do so; and Goldenpark did not request further leave to amend.

A judgment of dismissal was entered against Goldenpark, and this appeal followed.

5

**DISCUSSION**

## I. Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

## II. Breach of implied covenant of good faith and fair dealing

"[E]very contract contains an implied covenant of good faith and fair dealing that '"neither party will do anything which will injure the right of the other to receive the benefits of the agreement."' [Citations.]" (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1120.) A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements: (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct. (CACI No. 325.)

Goldenpark alleges that defendants breached the implied covenant of good faith and fair dealing by failing to recognize monthly installment payments actually made and accepted; by applying the default rate of interest to the entire outstanding principal loan

6

balance, rather than to the amount in default; by depriving Goldenpark of the right to reinstate the loans under Civil Code section 2924c; and by foreclosing on the hotel based on overstated notices of default. Goldenpark further alleges that defendants' breaches caused Goldenpark to lose the hotel to UCS by nonjudicial foreclosure and to suffer damages exceeding $10 million.

### A. Monthly payments

The SAC alleges that the loan modification agreements, which expressly provide for three reduced monthly payments of $55,000 to be made in August, September, and October 2010, "was patently a mistake" because the parties intended the reduced monthly payments to be made in the months of September, October, and November 2010. Goldenpark claims to have made the full monthly payment due in August 2010, and that the reduced monthly payment it made in November 2010 was authorized under Modification 1. Goldenpark further claims that defendants' failure to recognize monthly installment payments actually made breached the implied covenant of good faith and fair dealing.

Goldenpark's allegations directly contradict the declaration of its managing member, Dae In Kim, filed in Goldenpark's bankruptcy proceeding. In his declaration, Kim acknowledged that Modification 1 allowed only three reduced monthly payments of $55,000, "beginning August 25, 2010," and admitted that Goldenpark defaulted on Loan 1 in November 2010 by making a fourth $55,000 monthly payment instead of the full monthly payment that was due. The contradictory allegations in Goldenpark's SAC cannot serve as a valid basis for a breach of implied covenant claim. (See *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 384 [allegations inconsistent with prior pleadings are treated as sham and disregarded]; *Congleton v. National Union Fire Ins. Co.* (1987) 189 Cal.App.3d 51, 62 [leave to amend properly denied where allegations contradicted earlier declarations establishing that no cause of action existed as matter of law].)

7

### B. *Default interest rate*

Goldenpark alleges that defendants' application of the default interest rate to the entire loan balance rather than to the amount in default was an unenforceable penalty as a matter of California law.[2]  As support for its position, Goldenpark cites *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 (*Garrett*).  That case, however, is both factually and legally distinguishable.

*Garrett* concerned borrowers who made untimely loan payments and who were assessed late charges calculated as a percentage of the entire unpaid principal loan balances.  (*Garrett, supra,* 9 Cal.3d at p. 734.)  The California Supreme Court held that the late charges were void under Civil Code sections 1670 and 1671.  (*Garrett*, at pp. 738-740.)  Those statutes then in effect made liquidated damages clauses in commercial contracts presumptively invalid and imposed on the party seeking to rely on such a clause the burden of proving that determining the amount of actual damages that would be sustained upon an anticipated breach would be "impracticable" or "extremely difficult."[3] (*Id.* at p. 738.)

That legal standard no longer applies.  After the Supreme Court's decision in *Garrett*, former Civil Code section 1670 was repealed (Stats. 1977, ch. 198, § 2), and Civil Code section 1671 was amended (Stats. 1977, ch. 198, § 5) to "replace the former policy of presumptive *invalidity* of liquidated damages clauses [citation] with a policy of presumptive *validity*.  [Citations.]"  (*Weber Lipshie & Co. v. Christian* (1997) 52

---

[2]  Goldenpark does not argue that the default interest provision is unlawful per se, nor does it challenge UCS's exercise of its remedy to accelerate the loans following a default.

[3]  Former Civil Code section 1670 stated:  "'Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section.'"  Former Civil Code section 1671 provided:  "'The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.'"  (*Garrett, supra*, 9 Cal.3d at p. 735, fn. 1.)

Cal.App.4th 645, 654.) The current version of Civil Code section 1671 provides, subject to exceptions that are not applicable here, that "a provision in a contract liquidating the damages for breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (Civ. Code, § 1672, subd. (b).)

The SAC alleges no facts showing that UCS's application of the default interest provision to the outstanding loan balance, following Goldenpark's default and UCS's acceleration of the loans, was unreasonable under the circumstances existing at the time Goldenpark entered into the loan agreements. It accordingly fails to state a claim to invalidate UCS's actions under Civil Code section 1671, subdivision (b) or for breach of the covenant of good faith and fair dealing premised on such invalidity. Goldenpark's breach of implied covenant claim based on allegedly overstated notices of default fails for the same reasons.

### C. Reinstatement of loans

Goldenpark alleges that defendants breached the implied covenant of good faith and fair dealing by interfering with its statutory right to reinstate the loans under Civil Code section 2924c. That statute accords a borrower who has defaulted on a loan secured by real property the right, until five business days before the noticed date of the foreclosure sale, to cure the default and to reinstate the loan. (Civ. Code, § 2924c, subd. (a), (e).)[4] To exercise that right, the borrower must tender payment of "the entire amount

---

[4]    Civil Code section 2924c is part of the statutory reinstatement scheme for a defaulted loan. Subdivision (a)(1) of that statute provides in relevant part: "Whenever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property . . . has, prior to the maturity date fixed in that obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal, or by reason of failure of trustor or mortgagor to pay, in accordance with the terms of that obligation or of the deed of trust or mortgage, taxes, assessments, premiums for insurance, or advances made by beneficiary or mortgagee in accordance with the terms of that obligation or of the deed of trust or mortgage, the trustor or mortgagor or his or her successor in interest in the mortgaged or trust property or any part thereof . . . at any time within the period specified in subdivision (e), if the power of sale therein is to be exercised, or, otherwise at any time prior to entry of the

9

due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, [and] (B) all amounts in default on recurring obligations not shown in the notice of default." (Civ. Code, § 2924c, subd. (a)(1).)

In the SAC, Goldenpark admits that it defaulted on the loans. Goldenpark's default entitled UCS to exercise remedies under the loan agreements to accelerate the debt, record notices of default, and foreclose on the hotel.

The SAC does not allege that Goldenpark sought to exercise its rights under Civil Code section 2924c at any time after recordation of the notices of default by tendering payment of any amount due under the loans. The SAC alleges:

> "45. Upon receiving the notices of default, to its shock, [Goldenpark] nonetheless immediately sought to reinstate the Loans. Whether or not there was a right to accelerate the Loans, [Goldenpark] had the necessary funds to pay any lawful and valid amount allegedly in default."

> "46. The deceitful methodology used to calculate a false and grossly inflated amount in default, including the prohibited default interest calculations . . . made it impossible for [Goldenpark] to reinstate the supposed defaults."

---

decree of foreclosure, may pay to the beneficiary or the mortgagee or their successors in interest, respectively, the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, . . . , and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if the acceleration had not occurred." (Civ. Code, § 2924c, subd. (a)(1).)

10

"67. [Goldenpark], pursuant to its right to do so under California Civil Code section 2924c[,] subdivision (e), attempted to reinstate its Loans after it received the Notices of Default."

These allegations are insufficient to establish that Goldenpark attempted to exercise its rights under Civil Code section 2924c by tendering payment of the amount due under loans. The allegations that Goldenpark "attempted to reinstate the Loans" or that it "had the necessary funds" to do so are insufficient to establish a valid tender under Civil Code section 2924c. "'The rules which govern tenders are strict and are strictly applied, and where the rules are prescribed by statute or rules of court, the tender must be in such form as to comply therewith. The tenderer must do and offer everything that is necessary on his part to complete the transaction, *and must fairly make known his purpose without ambiguity*, and the act of tender must be such that it needs only acceptance by the one to whim it is made to complete the transaction.' [Citation.]" (*Gaffney v. Downey Savings & Loan Assn.* (1988) 200 Cal.App.3d 1154, 1165.)

The SAC contains no factual allegations to support Goldenpark's claim that it attempted to exercise its statutory right to cure the defaults and to reinstate the loans under Civil Code section 2924c. [5] Goldenpark's breach of implied covenant cause of action, premised on defendants' alleged interference with that statutory right, accordingly fails to state a claim.

### D. The demurrer was properly sustained

The trial court did not err by sustaining defendants' demurrer to the cause of action for breach of the implied covenant of good faith and fair dealing.

## III. UCL Claim

To state a claim for violation of the UCL, the plaintiff must allege that the defendant engaged in a business act that is fraudulent, unlawful, or unfair. (*Levine v.*

---

[5] In its reply brief, Goldenpark argued for the first time that it was not required to tender payment under the loans as a condition to asserting the claims alleged in the SAC. By failing to raise this argument in its opening brief, Goldenpark waived the right to have it considered on appeal. (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 270.)

*Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1136.) Goldenpark's second cause of action for violation of the UCL is based on the same allegations as its failed breach of implied covenant claim and is thus derivative of that claim. When the underlying cause of action fails, a derivative UCL claim also fails. (*Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1147.)

The UCL claim fails for the additional reason that Goldenpark cannot establish standing to bring a private UCL action. To do so, a plaintiff must show that it suffered economic injury and that such injury was caused by the unfair business practice that is the gravamen of its claim. (Bus. & Prof. Code, § 17204; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322-323.) The SAC alleges that Goldenpark suffered economic injury -- loss of the hotel through foreclosure. It fails, however, to establish a causal link between that claimed injury and defendants' allegedly unlawful acts. "A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered 'the same harm whether or not a defendant complied with the law.' [Citation.]" (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 522 (*Jenkins*).)

The instant case is similar to *Jenkins*, in which the plaintiff borrower attempted to plead a UCL claim based on allegations concerning the defendants' nonjudicial foreclosure on her home. (*Jenkins, supra*, 216 Cal.App.4th at pp. 505, 519.) The court in *Jenkins* sustained the defendants' demurrer to the UCL claim, noting that the plaintiff had admitted in the complaint to defaulting on the loan and that the default occurred before any of the defendants' alleged unlawful acts. That default, the court concluded, "triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected Jenkins's home to nonjudicial foreclosure." (*Id.* at p. 523.) The court further concluded that because the plaintiff's default occurred before any of the defendants' allegedly wrongful actions, she "cannot assert the impending foreclosure of her home (i.e., her alleged economic injury) was caused by Defendants' wrongful actions" and "cannot show any of the alleged violations have a causal link to her economic injury." (*Ibid.*)

Here, as in *Jenkins*, Goldenpark admits that it defaulted on the loans.  That default triggered UCS's foreclosure rights under the loan agreements and deeds of trust.  All of UCS's allegedly wrongful conduct -- applying the default rate of interest, overstating amounts in the notices of default, and foreclosing on the property based on overstated notices of default -- occurred after Goldenpark's default.  The foreclosure was thus triggered by Goldenpark's default, not by any of defendants' allegedly wrongful acts.  The SAC fails to establish a causal link between Goldenpark's claimed economic injury -- loss of the hotel through foreclosure -- and the allegedly unlawful acts committed by defendants.

The trial court did not err by sustaining the demurrer as to Goldenpark's UCL cause of action.

## IV.  Leave to amend

Goldenpark fails to suggest how it would amend the SAC to correct the defects discussed above.  The burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The trial court therefore did not abuse its discretion by sustaining the demurrer without leave to amend.

### DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT