Filed 8/24/17

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| LINDA RUBENSTEIN, | B272356 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC555010) |
| v. | |
| THE GAP, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kenneth R. Freeman, Judge.  Affirmed.

Kirtland & Packard, Behram V. Parekh and Joshua A. Fields for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Nicklas A. Akers, Senior Assistant Attorney General, Michele Van Gelderen, Supervising Deputy Attorney General, and Tina Charoenpong, Deputy Attorney General, for the State of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Morgan, Lewis & Bockius, Joseph Duffy and Esther K. Ro for Defendant and Respondent.

_____

Plaintiff and appellant Linda Rubenstein appeals from a judgment entered after the trial court sustained the demurrer of defendant and respondent The Gap, Inc. (Gap) without leave to amend. The trial court found that Rubenstein could not state claims under our state's Unfair Competition Law (UCL), Business and Professions Code section 17200 et seq.; False Advertising Law (FAL), Business and Professions Code section 17500 et seq.; or Consumers Legal Remedies Act (CLRA), Civil Code section 1750 et seq., because she failed to allege a misrepresentation or an actionable omission on the part of Gap. Instead, she alleged only that Gap deceptively sells lesser-quality Gap and Banana Republic clothing items at Gap and Banana Republic "Factory Stores," items that are never sold at "traditional" Gap and Banana Republic stores. We affirm the judgment.

## BACKGROUND

Rubenstein filed her operative second amended complaint (SAC) on August 31, 2015, purporting to allege causes of action under the FAL, UCL, and CLRA. The factual basis for all of the causes of action was identical: (1) Gap uses "Gap" and "Banana Republic" in naming its factory stores, which are located in outlet malls; (2) Gap also places "Gap" and "Banana Republic" labels in the clothing items Gap sells at the factory stores, even though the clothing is allegedly of lesser quality than clothing sold at traditional Gap and Banana Republic stores; and (3) Gap does not disclose to consumers that factory store items are not sold at traditional stores and are of lesser quality, but instead puts three geometrical symbols on factory store clothing labels to differentiate these items.

2

On the basis of these facts, Rubenstein alleges that she "was misled about the quality and authenticity of Defendant's Products," and this caused her to purchase products from Gap and Banana Republic Factory Stores. Rubenstein concludes that, like her, reasonable consumers expect factory stores to be outlet stores, and expect outlet stores to offer for sale at a discounted price items that were once for sale at retail stores. Thus, according to Rubenstein, "In using the names of the retail stores in the names of the Factory Stores and on the labels of the Factory Store Products, Defendant was communicating to the public that the Factory Store products are the same products and of the same quality that consumers have come to associate with the Gap and Banana Republic brands."

Each cause of action of the SAC was based on Gap's alleged misrepresentation in using the Gap and Banana Republic brand names for items that had never been sold in traditional Gap and Banana Republic stores and/or were of lesser quality, and also on Gap's failure to disclose these facts to consumers. In the first cause of action, Rubenstein alleged that Gap "misled consumers by making untrue statements and failing to disclose what is required as stated in [the FAL]." The second cause of action alleged "[t]he material misrepresentations, concealment, and non-disclosures by Defendant . . . are unlawful, unfair, and fraudulent business practices prohibited by the UCL." The third cause of action alleged that these same practices violated the CLRA by "[r]epresenting that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," by "[r]epresenting that goods . . . are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and by

3

"[a]dvertising goods . . . with intent not to sell them as advertised."  (Civ. Code, § 1770, subd. (a)(5), (7), (9).)

Rubenstein prayed for injunctive relief, restitution, damages, exemplary damages, attorney fees, and costs of suit, and for certification of a putative class of purchasers of Banana Republic Factory Store or Gap Factory Store clothing in California.

Gap demurred to the SAC.  Gap argued that Rubenstein could not establish liability under any of her proposed causes of action because she did not allege a misrepresentation by Gap or any duty to disclose that clothing sold in factory stores had not been offered for sale in traditional Gap and Banana Republic stores.  Gap argued that Rubenstein's claims rested on the untenable position that it was unlawful for Gap to use its Gap and Banana Republic brand names when selling its own merchandise in factory stores because the brand names implied a certain level of quality that was allegedly lacking.  Gap also argued that Rubenstein lacked statutory standing because she failed to allege how the items she purchased were not of the quality she expected or how the amount she paid exceeded the value she received.

Rubenstein opposed the demurrer, contending that reasonable consumers are likely to be deceived by Gap's naming practices.  According to Rubenstein, use of the Gap and Banana Republic brand names on factory stores and the clothing they carry leads consumers to believe they are purchasing items of a certain quality at a discount, when in fact they are buying lesser-quality apparel.  Rubenstein also argued that under *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326 (*LiMandri*), Gap had a duty to disclose to consumers that factory store merchandise had never

4

been offered for sale in traditional Gap stores.  Finally, Rubenstein argued that she had standing because the SAC alleged that she would not have paid as much for the items she purchased, if she purchased them at all, had she known that they were not of the same quality she had come to expect from the Gap and Banana Republic brands.

The trial court sustained the demurrer without leave to amend, concluding that "[t]he mere labeling of the Defendant's stores as the 'Gap Factory Store' or 'Banana Republic Factory Store' does not constitute any actionable misrepresentation about the quality or attributes of the products sold at those stores."  For the same reason, the trial court found that Rubenstein had not lost money or property as a result of an alleged violation of the UCL or the FAL, and therefore lacked statutory standing.  The trial court entered judgment on March 18, 2016, and Rubenstein filed a notice of appeal on May 12, 2016.

## DISCUSSION

1.    *Standard of Review*

We review de novo the trial court's order sustaining a demurrer.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to

constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## 2. *The SAC Fails to State a Claim for Violation of the FAL.*

The FAL makes it "unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state . . . in any newspaper or other publication, or any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." (Bus. & Prof. Code, § 17500.)  "In short, [the FAL] 'prohibits advertising property or services with untrue or misleading statements.' " (*McCann v. Lucky Money, Inc.* (2005) 129 Cal.App.4th 1382, 1388.)  An advertising statement is misleading if members of the public are likely to be deceived.  (*Ibid.*)

Rubenstein's SAC alleges no advertising or promotional materials or any other statements disseminated by Gap to consumers that its factory store clothing items were previously for sale in traditional Gap stores or were of a certain quality. Instead, Rubenstein alleges only that Gap's use of its own brand names—Gap and Banana Republic—in naming factory stores and on the labels of factory store clothing items was deceptive because the apparel is not of the brand name quality that Rubenstein has come to expect.  As a matter of law, Gap's use of

6

its own brand name labels on clothing that it manufactures and sells at Gap-owned stores is not deceptive, regardless of the quality of the merchandise or whether it was ever for sale at other Gap-owned stores.  Retailers may harm the value of their brands by selling inferior merchandise at factory stores, but doing so does not constitute false advertising.  Under these allegations, the trial court properly dismissed the FAL cause of action.

3.    ***The SAC Also Fails to State a Claim for Violation of the UCL.***

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'  ([Bus. & Prof. Code,] § 17200.)  Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' "  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.)

a.    ***Selling Nonidentical Brand Name Clothing in a Factory Store is not Fraudulent.***

"A business practice is 'fraudulent' within the meaning of [the UCL] if it is 'likely to deceive the public.  [Citations.]  It may be based on representations to the public which are untrue, and " 'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under' " the UCL.  [Citations.]  The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a

7

reasonable consumer.' " (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1380–1381.)

Although the likelihood of deception is often too fact-intensive to decide on the pleadings, courts can and do sustain demurrers on UCL claims when the facts alleged fail as a matter of law to show such a likelihood. (See, e.g., *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1409; *Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1307; *Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1556–1557; *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838; *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1275.)

This is such a case. As explained in discussing the FAL cause of action, the SAC alleges no statement by Gap about the quality of factory store merchandise or that it was previously for sale in traditional Gap-owned stores. Gap's use of its own brand names in factory store names and on factory store clothing labels is not likely to deceive a reasonable consumer for the simple reason that a purchaser is still getting a Gap or Banana Republic item. The SAC states that "[r]easonable consumers believe outlet stores sell products that were previously available for purchase at retail stores," but alleges no facts showing this to be true. Moreover, a consumer for whom the retail history of factory store items is material can ask Gap employees about this. A reasonable consumer would also inspect the quality of factory store clothing items before buying them and could return items after purchase if they turn out to be unsatisfactory. In the end, the allegation that Gap is not living up to the quality standards it has set for Gap and Banana Republic brands fails to state a cause of action for a fraudulent business practice under the UCL.

Rubenstein nevertheless argues that Gap had a duty to disclose to consumers that factory store clothing items were not previously sold in traditional Gap stores and were of lesser quality. She notes in her opening brief that under *LiMandri*, *supra*, 52 Cal.App.4th 326, "four circumstances exist where a defendant has an affirmative duty to disclose: (1) when a defendant is in a fiduciary relationship with plaintiff; (2) when a defendant had exclusive knowledge of material facts not known to plaintiff; (3) when a defendant actively conceals a material fact from plaintiff; or (4) when a defendant makes partial representations but also suppresses some material facts." (See *LiMandri*, at p. 336.) Rubenstein argues that Gap had a duty under circumstances (2), (3), and (4).

Rubenstein first argues Gap had a duty to disclose that its factory store clothing was not previously for sale at traditional Gap stores because Gap made partial representations while suppressing material facts. She again argues that use of Gap and Banana Republic in the names of factory stores and on clothing labels constituted representations that the items were of brand name quality, yet they were not. This argument fails. As a matter of law, Gap's use of its own brand names to market less expensive clothing lines in factory stores is not a partial representation, even if the products are alleged to be inferior to other brand name products. Nor is Gap's placement of geometric symbols on factory store clothing labels a partial representation, as Rubenstein argues, because the most these symbols represent is that the clothing is sold in factory stores.

Moreover, as in *Bardin v. DaimlerChrysler Corp.*, Rubenstein alleges no *facts* showing that reasonable consumers expect Gap and Banana Republic factory store items to have been

9

previously offered for sale in traditional Gap stores.  (*Bardin*, *supra*, 136 Cal.App.4th at p. 1262 [insufficient for plaintiffs to plead that they "are lay persons and consumers, who reasonably rightfully assumed that the manifolds in [defendant's] vehicles were quality components"]; *id.* at p. 1275.)

Next, Rubenstein argues that Gap had a duty to disclose under the third *LiMandri* circumstance because Gap "actively conceal[ed] a material fact from the plaintiff."  Active concealment occurs when a defendant prevents the discovery of material facts.  (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 798, p. 1155.)  Rubenstein relies on *Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, in which the plaintiff alleged active concealment of a product defect by a computer manufacturer "through corporate directives to continue selling the defective computers, and through a customer service campaign designed to preclude consumer discovery of the . . . Defect."  (*Id.* at p. 256.)  Here, by contrast, the fact Gap is supposed to have concealed is that Gap made factory store clothing items exclusively for factory stores, yet neither the SAC nor Rubenstein's opening brief on appeal point to any facts showing active concealment by Gap or that the nondisclosed fact was material to consumers.

Finally, Rubenstein argues that Gap had a duty to disclose that factory store products were not previously sold in traditional Gap stores because Gap had exclusive knowledge of this material fact.  This argument is unavailing.  As noted, the SAC does not allege facts showing that the sales history of factory store items is material to reasonable consumers.  Furthermore, any quality issues with factory store merchandise were not in Gap's exclusive knowledge because consumers had the ability to examine and try

on the apparel prior to purchase and to read garment labels for information on fabrics and materials used in manufacture.

The Attorney General as amicus curiae urges that even absent a false or misleading representation or a duty to disclose material information, a defendant may be liable for a fraudulent business practice under the UCL. The Attorney General argues that courts should not apply *LiMandri*, *supra*, 52 Cal.App.4th 326, to analyze whether UCL defendants have a duty to disclose material information, but should instead examine the context of a business practice to determine whether it is likely to deceive consumers by reinforcing their misleading expectations or assumptions.[1]

---

[1] The Attorney General points to *Klein v. Chevron U.S.A., Inc.* as concluding that an alleged failure to disclose was potentially deceptive without performing a *LiMandri* analysis to determine whether a duty to disclose existed. Yet in *Klein* a duty to disclose existed because the defendant was alleged to have made partial representations that were misleading. Among other things, the defendant sold gasoline in non-temperature-adjusted "gallons" even though consumers received less than a gallon of fuel, and the defendant charged "taxes" on the greater number of non-temperature-adjusted "gallons" even though it remitted taxes to the government on the basis of the smaller number of temperature-adjusted gallons. (*Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1351 ["Because Chevron and other retailers do not compensate for temperature increases in motor fuel at the retail level, California consumers pay 'hundreds of millions dollars' more in purported 'taxes' than the retailers actually pay to the government"]; *id.* at p. 1382 ["because Chevron advertised motor fuel in 'gallon' units without disclosing the effects of thermal expansion, members of the public expected

11

We decline to adopt the Attorney General's position, which is contrary to a good deal of Court of Appeal precedent on the importance of a duty to disclose.[2]  Moreover, even if we did adopt this position, it would not change the result in this case because Rubenstein's SAC does not allege sufficient facts to show that a reasonable consumer expects or assumes that Gap Factory Store merchandise was previously offered for sale in traditional Gap stores.

In sum, the trial court correctly ruled that Rubenstein had not alleged a "fraudulent" violation of the UCL.

**b.**     ***Selling Nonidentical Brand Name Clothing in a Factory Store is not Unlawful.***

"By proscribing 'any unlawful' business practice, '[Business and Professions Code] section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful

---

and assumed that they would receive a standardized amount of motor fuel in each purchase and that the stated price reflected the actual cost of that fuel"].)

[2] See, e.g., *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 613–614; *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 772; *Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1136; *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 987; *Berryman v. Merit Property Management, Inc.*, *supra*, 152 Cal.App.4th at pages 1556–1557; *Daugherty v. American Honda Motor Co., Inc.*, *supra*, 144 Cal.App.4th at page 838.

prong." (*Berryman v. Merit Property Management, Inc.*, *supra*, 152 Cal.App.4th at p. 1554.)  We have rejected Rubenstein's claim that Gap's alleged conduct violated the FAL, and below we conclude the SAC fails also to allege a violation of the CLRA.  As these two statutes are the bases for Rubenstein's allegations of unlawful practices by Gap, she cannot state a cause of action under the "unlawful prong" of the UCL.

### c. *Selling Nonidentical Brand Name Clothing in a Factory Store is not Unfair.*

In this court, the test for determining whether a business practice is unfair in consumer cases arising under the UCL is the same as that used under section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(n)).  (*Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403; *Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1376 & fn. 14.)  "[A] business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves."  (*Klein*, at p. 1376 & fn. 14 [applying and following *Camacho*].)

The SAC fails to allege an unfair business practice.  The injury alleged is not substantial because consumers are getting Gap and Banana Republic brand name items for low prices, and there is no allegation that Gap ever made any representations about the retail history or quality of factory store merchandise.  A consumer who cared about whether the items were identical to other Gap merchandise could have asked a sales associate whether this is true.  As for any quality issues, consumers could have examined factory store apparel before purchasing it, read

13

the clothing labels for materials used in manufacture, and returned merchandise after purchase if it was unsatisfactory. Indeed, Rubenstein does not allege that any of the clothing items she purchased at Gap and Banana Republic Factory Stores had any quality issues.[3]

## 4. *Rubenstein's CLRA Claim Fails As Well.*

"The CLRA makes unlawful, in Civil Code section 1770, subdivision (a) . . . various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.' " (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 639.) The CLRA proscribes 27 specific acts or practices. (Civ. Code, § 1770, subd. (a)(1)–(27).) In the SAC, Rubenstein alleges that Gap violated the CLRA by "[r]epresenting that goods . . . have . . . characteristics . . . that they do not have," "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods . . . with intent not to sell them as advertised." (*Id.*, § 1770, subd. (a)(5), (7), (9).) In her opening brief, Rubenstein also argues that Gap violates the CLRA's prohibition on "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." (*Id.*, § 1770, subd. (a)(14).)

---

[3] Because we decided that Rubenstein cannot state a claim under the FAL or the UCL, we need not decide whether the trial court properly ruled that Rubenstein also lacks statutory standing under the UCL and the FAL. (See Bus. & Prof. Code, §§ 17204, 17535.)

Rubenstein's CLRA cause of action fails because the SAC alleges no advertising or representation of any kind that Gap made about the characteristics or quality of its factory store merchandise.  Indeed, the SAC does not allege a single affirmative representation by Gap regarding factory store clothing other than a true one—the brand of the clothing is Gap or Banana Republic.  Nor did Gap have a duty to disclose the retail history of factory store clothing or that it was of lesser quality than clothing sold in other Gap stores.  (See *Daugherty v. American Honda Motor Co., Inc., supra*, 144 Cal.App.4th at p. 835 [to be actionable under the CLRA, an omission "must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose"].)  Because the facts as alleged show no violation of the CLRA, the trial court properly sustained Gap's demurrer to the third cause of action.

**5.    *The Trial Court Acted Within Its Discretion in Denying Leave to Amend.***

When a demurrer to a complaint is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)  "While such a showing can be made for the first time to the reviewing

15

court [citation], it must be made." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711; see Code Civ. Proc., § 472c.)

Rubenstein has not carried her burden of demonstrating how her complaint might be amended. Neither in her trial court demurrer opposition papers nor in her appellant's opening brief did Rubenstein explain how she would further amend her complaint if given leave or offer any additional facts she could allege in a third amended complaint. Accordingly, the trial court properly sustained Gap's demurrer without leave to amend. There was no error. (See *Hill v. Roll Internat. Corp., supra*, 195 Cal.App.4th at p. 1307.)

## DISPOSITION

The judgment is affirmed. Each party to bear its own costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

16