Filed 7/5/22 Haas v. Little Love Rescue CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELLIOT HAAS, | B308898 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV20469) |
| v. | |
| LITTLE LOVE RESCUE et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Appellants | (NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

It is ordered that the opinion filed herein on June 14, 2022 be modified as follows:

1.  On page 18, footnote 6 is deleted and the following footnote is inserted in its place:

> In their briefs and at oral argument counsel for Littleton and Little Love Rescue, after noting the significant response to the social media campaign concerning Luna, asserted broadly that any issue in which the public is interested is an issue of public interest.  That sweeping pronouncement, based on language in *Chaker v. Mateo* (2012) 209 Cal.App.4th

1138, 1145, is at odds with *FilmOn*'s caution that determining whether the subject of speech or other conduct constitutes a matter of public interest requires an evaluation of specific contextual considerations, such as whether a person or entity was in the public eye or whether the activity occurred in the context of an ongoing controversy, dispute or discussion. (*FilmOn, supra,* 7 Cal.5th at p. 145; accord, *Musero v. Creative Artists Agency, Inc., supra,* 72 Cal.App.5th at p. 822, fn. 8; see, e.g., *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 22 [applying *FilmOn* criteria to both section 425.16, subdivision (e)(3) and (4); ""'[p]ublic interest" does not equate with mere curiosity"']; *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226 ["[n]o authority supports the [defendant's] broad proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue"].)

There is no change in the appellate judgment.

Appellant's petition for rehearing is denied.

_____

PERLUSS, P. J.         SEGAL, J.         FEUER, J.

Filed 6/14/22  Haas v. Little Love Rescue CA2/7 (Unmodified Opinion)
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from 3citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELLIOT HAAS, | B308898 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV20469) |
| v. | |
| LITTLE LOVE RESCUE et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Affirmed.

Pease Law and Bryan Pease for Defendants and Appellants.

Housing Equality & Advocacy Resource Team and Dianne Prado for Plaintiff and Respondent.

—————————————

Elliot Haas, an unhoused individual living on the streets of Los Angeles, sued Brittney Littleton and Little Love Rescue for trespass to chattels, conversion, receipt of stolen property in violation of Penal Code section 496, subdivision (a), violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) and intentional infliction of emotional distress, alleging Littleton and Little Love Rescue stole his dog Luna and thereafter on various social media platforms misrepresented Luna's health and living conditions to raise money. Littleton and Little Love Rescue filed a special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16.[1] The trial court denied the motion, ruling Haas's causes of action did not arise from protected speech or petitioning activity within the meaning of section 425.16, subdivision (e). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Haas's Complaint*

In a complaint filed May 29, 2020 Haas alleged he had been given Luna (a pit bull) in 2013 and she lived with him in his tent on the streets until January 2020. Luna suffered a seizure in 2019 that left her hind legs paralyzed.

According to Haas's complaint, a man and a woman approached Haas on January 24, 2020 and offered him a table. After helping him set it up, the woman took Luna without Haas's permission and put the dog in the couple's car. When Haas asked for Luna's return, the individuals said she looked sick and they wanted to take her to a veterinarian. They said they would

---

[1] Statutory references are to this code unless otherwise stated.

return Luna to Hass after she had been evaluated. The couple then drove off with the dog.

Haas reported the incident to the police, who, after some investigation, told Haas the individuals who took Luna were friends of Littleton, the owner of Little Love Rescue. Immediately after Luna was taken from Haas, Little Love Rescue posted on social media (Instagram) and began a fundraising campaign to "Save Luna—the Paralyzed Street Dog." Haas alleged the social media posts fabricated claims that Luna had been mistreated.

In a cause of action for trespass to chattels, Haas alleged Littleton and Little Love Rescue had possession of Luna, Haas's personal property, and refused to return the property to him. In his cause of action for conversion, Haas incorporated those allegations and additionally alleged Luna helped alleviate the symptoms of his disabilities (hearing loss, severe depression and anxiety) and aided him in his daily life activities. Any damage to her, "no matter how slight," he averred, would sever the emotional bond he and Luna had developed during the six years he owned Luna. The cause of action for receipt of stolen property repeated the allegations from the trespass to chattels and conversion claims.

Haas's fourth cause of action alleged Littleton and Little Love Rescue violated the UCL by "misrepresenting how the property was acquired, raising funds under misrepresentations, failing to disclose the property was stolen and disclose material information to funders" and the false advertising law (Bus. & Prof. Code, § 17500) by "falsely advertising Little Love Rescue was a non-profit, falsely advertising how the property was acquired in order to gain more funding, misleading the condition

3

of the property." The final cause of action for intentional infliction of emotional distress alleged Littleton and Little Love Rescue worked in combination with the two individuals to steal Luna and to create a false story in order to raise funds on social media.

    2. *The Special Motion To Strike*

Littleton and Little Love Rescue on July 29, 2020 filed a special motion to strike the complaint pursuant to section 425.16, asserting "many" (a term they did not define) of Haas's claims arose from statements made in connection with an official police investigation or in a public forum in connection with an issue of public interest—all protected speech or petitioning activity under the statute. In particular, Littleton and Little Love Rescue argued the refusal to return Luna to Haas as alleged in the causes of action for trespass to chattels, conversion and intentional infliction of emotional distress was based on statements they made to police officers investigating Haas's charge of theft in which they explained Haas was an animal abuser, who, in any event, could not prove his ownership of the animal. The claims relating to fundraising efforts in social media posts, they asserted, were based on statements in public fora concerning Luna's rescue, veterinary care and placement with an adoptive family, all issues of public interest.

With respect to Haas's likelihood of prevailing on the merits of his claims, Littleton and Little Love Rescue told a very different story from that alleged in Haas's complaint, submitting declarations from Shayla McGhee, the woman who originally picked up Luna from Haas; Littleton; and Alex Angel, who adopted Luna in March 2020 and cared for her for a month until finally agreeing with her veterinarian's recommendation that

4

Luna was suffering from untreatable health problems and should be euthanized.

McGhee declared that Luna was in deplorable condition when she and her friend saw an old, seemingly malnourished dog come out of Haas's tent on January 24, 2020: "[H]er back legs were completely crossed over with cuts and sores all over them, her tail and backside looked like they were covered with infections, dirty bandages were wrapped around the bottom of her legs." McGhee and her friend offered to take Luna to the veterinarian to have the infections on her body examined, and Haas agreed. Before leaving with Luna, McGhee and Haas exchanged cell phone numbers.

The veterinarian diagnosed a severe urinary tract infection and skin infections and recommended X-rays and a number of tests to determine what else was wrong with Luna. McGhee was not prepared for the expensive care that was required and reached out to Little Love Rescue. After leaving the veterinarian's clinic, McGhee called Haas, explained the situation, and told him Luna needed to stay overnight at the clinic.

Littleton stated she was the founder of Little Love Rescue, which she declared was a validly existing California nonprofit corporation registered and active with the California Secretary of State. Littleton described the initial call she received from McGhee concerning Luna and Littleton's agreement to provide for Luna's care. Littleton detailed Luna's various medical problems and the extensive treatment the dog received.

While Luna was being treated, Littleton was contacted by the police, who only asked that she speak directly to Haas, which she did. According to Littleton, Haas admitted he had given

5

permission for Luna to be taken for veterinarian care, but vacillated between expressing appreciation for what she was doing and threatening her if she did not return Luna to him. Littleton asked Haas to provide some proof of ownership of Luna. Although Haas said he could provide veterinarian and licensing records to prove ownership, he never did.

Angel explained she saw Luna's story online, donated to Little Love Rescue in response several times and offered to give Luna a home with Angel's three other rescue dogs. Luna's condition continued to deteriorate, and she stopped responding to treatment. Ultimately, Angel's veterinarian advised it was humane for Luna to be euthanized to end her suffering, a recommendation with which Angel reluctantly agreed. Angel notified Littleton of the decision before it was implemented.

In his opposition Haas argued his causes of action for trespass to chattels, conversion and intentional infliction of emotional distress were based on Littleton and Little Love Rescue's receipt of stolen property, refusal to return Luna and acquiescence in the decision to euthanize the dog, not any statements made to police investigators or on social media, the latter at most being incidental to these claims. As for the cause of action under the UCL, although not disputing that social media posts constitute statements in a public forum, Haas asserted Littleton and Little Love Rescue had failed to show the posts implicated any issue of public interest: The story of an unloved and abused dog living on the streets was not only false, Haas argued, but also entirely unrelated to any public issue or issue of public interest.

Addressing the merits of his causes of action, Haas in his opposition memorandum explained the superior court had

6

granted his request for a writ of possession for Luna's return to him, thus establishing a probability of prevailing on his claims for trespass to chattels and conversion.[2]  For his UCL claim, Haas described an Attorney General action against Little Love Rescue for unlawful solicitation, breach of charitable trust and unfair business practices (included by Haas in a request for judicial notice) and argued the misrepresentations of how Luna was taken from him and her medical condition, used to solicit funds, was both a fraudulent business practice and deceptive advertising.  The combined actions of receiving Luna as stolen property, refusing to return her and acquiescing in her death, all while knowing Haas was her rightful owner who was demanding her return, Haas asserted, constituted outrageous conduct sufficient to establish a prima facie case for intentional infliction of emotional distress.  No declarations to support the probable merit of Haas's claims were submitted with the opposition.

In their reply memorandum, in addition to pointing to the absence of any admissible evidence to support Haas's arguments on the merits of his causes of action, Littleton and Little Love Rescue suggested their social media posts about Luna concerned the issue of animal neglect and cruelty, which is a matter of public interest.

### 3. *The Trial Court's Ruling*

The trial court denied the motion, ruling Littleton and Little Love Rescue had failed to carry their threshold burden of demonstrating any of Haas's claims arose from protected speech

---

[2]  In their reply memorandum Littleton and Little Love Rescue noted the writ had been issued ex parte in the literal sense of that term—that is, without notice and with no defendant present—and was later vacated by the court.

or petitioning activity within the meaning of section 425.16.  The trespass to chattels and conversion causes of action, the court found, were based on Littleton and Little Love Rescue's refusal to return Luna to Haas (deprivation of the dog), not statements made to police investigators explaining their reasons for not doing so.  The UCL and false advertising claims, which were based on social media posts, and the cause of action for intentional infliction of emotional distress, which was predicated at least in part on those posts, not just the refusal to return Luna, arose from statements made in a public forum because they were on websites accessible to the public.  But, the court continued, publication on a generally available Internet site does not turn otherwise private information into a matter of public interest.  Here, the information was specific to Luna and her health, and the functional relationship between that speech and the topic of animal cruelty was too attenuated to be a matter of public interest within the meaning of section 425.16.  And there was no showing Luna herself was a topic of public interest.

Littleton and Little Love Rescue filed a timely notice of appeal.  (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

# DISCUSSION

1. *The Special Motion To Strike: Governing Law and Standard of Review*

Section 425.16, commonly known as the anti-SLAPP statute, makes available a special motion to strike certain meritless claims early in the litigation: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see *Rand Resources, LLC. v. City of Carson* (2019) 6 Cal.5th 610, 619-620 ["[a] court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim"].)

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in

furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a special motion to strike under section 425.16, the trial court engages in a now-familiar two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*); accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at pp. 1062-1063.) Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); see *Bonni, supra*, 11 Cal.5th at p. 1009 ["[t]he defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity"]; *Park*, at p. 1060.)

A motion pursuant to section 425.16 need not challenge an entire cause of action as pleaded in the complaint. (*Bonni, supra*, 11 Cal.5th at p. 1010; *Baral, supra*, 1 Cal.5th at p. 382.) Rather,

10

"courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, at p. 1010; accord, *Baral*, at p. 395.)

If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity (the first step), the court properly denies the motion to strike without addressing the probability of success (the second step). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81; *Verceles v. Los Angeles United School Dist.* (2021) 63 Cal.App.5th 776, 784.)

We review de novo an order granting or denying a special motion to strike under section 425.16. (*Wilson*, *supra*, 7 Cal.5th at p. 884; *Park*, *supra*, 2 Cal.5th at p. 1067.)

2. *None of Haas's Causes of Action Arises from Protected Activity*

a. *Conversion and trespass to chattels*

"As it has developed in California, the tort [of conversion] comprises three elements: '(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.'" (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150; see *Fong v. East West Bank* (2018) 19 Cal.App.5th 224, 231 [conversion is the wrongful exercise of dominion over the property of another].) The elements of a cause of action for trespass to chattel are (1) the plaintiff's possession of the property, (2) the defendant's intentional interference with the plaintiff's use of the property, (3) without the plaintiff's consent,

11

and (4) damages.  (*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1566-1567.)

Haas adequately pleaded both torts by alleging he owned Luna and was damaged by Littleton's refusal to return Luna to him, knowing she had been stolen, and thereafter by giving the dog to Angel and acquiescing in Luna's euthanasia.[3]

Littleton and Little Love Rescue argue the refusal-to-return element of these two causes of action arises from protected speech activity within the meaning of section 425.16, subdivision (e)(2)—statements made in connection with an issue under review in a judicial proceeding or other official proceedings authorized by law—because Littleton communicated her refusal to return Luna to Haas to police officers during their investigation of the alleged theft of the dog, as well as in prelitigation discussions with Haas and his lawyer.  But Littleton's statements to the police, which are nowhere mentioned in the complaint, or to Haas or his lawyer in response to potential legal action to recover possession of Luna, do not constitute the wrong alleged—Littleton's actions in keeping Luna notwithstanding Haas's demands for her return and then giving Luna to Angel for adoption.  That conduct is neither speech nor petitioning activity.  (See *Park, supra,* 2 Cal.5th at p. 1060 ["[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning

---

[3]  On appeal Littleton and Little Love Rescue do not address Haas's cause of action for receipt of stolen property in violation of Penal Code section 496, subdivision (a).

12

activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted"]; see also *id.* at p. 1068 ["The dean's alleged comments may supply evidence of [discriminatory] animus, but that does not convert the statements themselves into the basis for liability. As the trial court correctly observed, Park's complaint is 'based on the act of denying plaintiff tenure based on national origin. Plaintiff could have omitted allegations regarding communicative acts . . . and still state the same claims'"]; *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 700-701 ["[W]here a plaintiff's claim is based upon 'an action or decision' of the defendant, it is not enough that some protected activity by the defendant *precedes* that action or decision, that some protected activity *is the means of communicating* that action or decision, or that some protected activity *constitutes evidence of* that action or decision. [Citation.] To fall under the anti-SLAPP statute, the challenged action or decision itself must *be* protected activity"]; cf. *Rand Resources, LLC v. City of Carson, supra,* 6 Cal.5th at pp. 622-623 [in claim for fraudulent misrepresentation, mayor and city officials' statements are "themselves the 'wrong[s] complained of'"].)

The trial court did not err in denying the motion to strike these two causes of action.

b. *Intentional infliction of emotional distress*

A cause of action for intentional infliction of emotional distress exists when there is "'"'"(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

13

distress by the defendant's outrageous conduct.'"'" [Citations.] A defendant's conduct is 'outrageous' when it is so "'"extreme as to exceed all bounds of that usually tolerated in a civilized community."'" [Citation.] And the defendant's conduct must be "'"intended to inflict injury or engaged in with the realization that injury will result."'"' (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.) "Whether behavior is extreme and outrageous is a legal determination to be made by the court, in the first instance." (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 172; accord, *Chang v. Lederman* (2009) 172 Cal.App.4th 67, 87; *Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44.)

Haas's cause of action for intentional infliction of emotional distress is based on both Littleton's refusal to return Luna and Littleton and Little Love Rescue's social media campaign, which he alleged falsely portrayed his treatment of Luna while she was with him on the street. As discussed, Littleton's conduct in refusing to return Luna is not protected activity within the meaning of section 425.16, regardless of any statements she made to police investigators or to Haas or his counsel. The social media posts, however, unquestionably constitute speech in a public forum. (See, e.g., *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 ["[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute"]; *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1252 [same].) But those posts were not made "in connection with an issue of public interest" within the meaning of section 425.16, subdivision (e)(3).

On appeal Littleton and Little Love Rescue do not contend that Luna or Haas was a celebrity or that their story, narrowly considered, was a matter of public interest, but argue, as they did in their reply memorandum in the trial court, that their social

14

media posts about Luna contributed to discussion of the broader public issue of animal welfare. In support they quote from *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228 (*Huntingdon Life Sciences*), in which the court of appeal held posts on a website advocating protests, including acts of civil disobedience, against Huntingdon Life Sciences (HLS), a company engaged in animal testing, and HLS employees constituted protected speech concerning an issue of public interest: "Animal testing is an area of widespread public concern and controversy, and the viewpoint of animal rights activists contributes to the public debate." (*Id.* at p. 1246.)

Fourteen years after the decision in *Huntingdon Life Sciences*, the Supreme Court in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 145-146 (*FilmOn*) explained, "In articulating what constitutes a matter of public interest, courts look to certain specific considerations, such as whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation], or 'affect[ed] a community in a manner similar to that of a governmental entity.'" Elaborating, the *FilmOn* Court held, "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." (*Id.* at pp. 149-150.)

15

Context includes the identity of the speaker, the audience and the purpose of the speech.  (*Id*. at pp. 142-143, 145.)

As our colleagues in Division Eight of this court held in *Jeppson v. Ley* (2020) 44 Cal.App.5th 845, under *FilmOn*, connecting a broad and amorphous public interest to a specific dispute is not enough.  "The proper focus of the inquiry instead must be on 'the specific nature of the speech,' not on 'generalities that might be abstracted from it.'"  (*Id*. at p. 856; accord, *Musero v. Creative Artists Agency, LLC* (2021) 72 Cal.App.5th 802, 820; see *Rand Resources, LLC v. City of Carson*, *supra*, 6 Cal.5th at p. 625 ["[a]t a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance"].)

Littleton and Little Love Rescue's posts about Luna, while describing a particular instance of apparent animal cruelty, were intended to raise money for Luna's care, not to address the issue of animal welfare more generally.[4]  In arguing otherwise, Littleton and Little Love Rescue fall prey to what courts, including the Supreme Court in *Wilson*, *supra*, 7 Cal.5th at page 902 and *FilmOn*, *supra*, 7 Cal.5th at page 152, have referred to as the "synecdoche theory"[5] of public interest.  "[F]or anti-

---

[4]    The website at issue in *Huntingdon Life Sciences*, *supra*, 129 Cal.App.4th 1228, in contrast, was designed to force the closure of HLS and, in connection with targeting a specific employee and advocating protests at her home, directly discussed the problem of animal testing, reporting "500 animals die each day because of her wicked ways."  (*Id*. at p. 1240.)

[5]    "Synecdoche" is "a figure of speech by which a part is put for the whole (such as *fifty sail* for *fifty ships*), the whole for a part (such as *society* for *high society*), the species for the genus (such as *cutthroat* for *assassin*), the genus for the species (such

16

SLAPP purposes, as courts have long recognized, '[t]he part is not synonymous with the greater whole.' [Citation.] Contrary to arguments that various defendants have pressed over the years, '[s]elling an herbal breast enlargement product is not a disquisition on alternative medicine. Lying about the supervisor of eight union workers is not singing one of those old Pete Seeger union songs (e.g., "There Once Was a Union Maid"). And . . . hawking an investigatory service is not an economics lecture on the importance of information for efficient markets.'" (*Wilson*, at p. 902; see *Rand Resources, LLC v. City of Carson, supra*, 6 Cal.5th at p. 625 ["[w]hat a court scrutinizing the nature of speech in the anti-SLAPP context must focus on is the speech at hand, rather than the prospects that such speech may conceivably have indirect consequences for an issue of public concern"].)

In *Wilson* the Supreme Court rejected CNN's argument that statements about a specific instance of a journalist's alleged plagiarism contributed to public debate about journalistic ethics and when authors may or may not borrow without attribution. (*Wilson, supra*, 7 Cal.5th at p. 903.) Similarly here, we reject Littleton and Little Love Rescue's argument their posts about a specific instance of a neglected animal contributed to a larger public debate on the issue of animal welfare or the benefits and drawbacks of unhoused individuals caring for pets. The degree of connection between those statements and any topic of public

---

as *a creature* for *a man*), or the name of the material for the thing made (such as *boards* for *stage*)." (Merriam-Webster's Dict. Online <https://merriam-webster.com/dictionary/synecdoche> [as of June 14, 2022], archived at <https://perma.cc/ R22V-23AU>.)

interest is insufficient to warrant protection under section 425.16, subdivision (e)(3).[6]

### c. *Violation of the UCL and false advertising law*

The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) Written in the disjunctive, the UCL establishes "three varieties of unfair competition—acts or practices which are unlawful, unfair, or fraudulent." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; accord, *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.) Under the "fraudulent" prong, a business practice violates the UCL if it "is likely to deceive the public. [Citations.] It may be based on representations to the public which are untrue, and "'also those

---

[6] At oral argument counsel for Littleton and Little Love Rescue, after noting the significant response to the social media campaign concerning Luna, asserted broadly that any issue in which the public is interested is an issue of public interest—an argument not made in their briefs. That sweeping pronouncement is directly at odds with *FilmOn*'s caution that determining whether the subject of speech or other conduct constitutes a matter of public interest requires an evaluation of specific contextual considerations, such as whether a person or entity was in the public eye or whether the activity occurred in the context of an ongoing controversy, dispute or discussion. (*FilmOn, supra*, 7 Cal.5th at p. 145; see, e.g., *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 22 [""[p]ublic interest" does not equate with mere curiosity"]; *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226 ["[n]o authority supports the [defendant's] broad proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue"].)

which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under'" the UCL. [Citations.] The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471; accord, *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1380; see *Rubenstein v. The Gap, Inc.* (2017) 14 Cal.App.5th 870, 876-877; see also *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370 ["[f]alse advertising is included in the 'fraudulent' category of prohibited practices"].)

Like the UCL, Business and Professions Code section 17500, the false advertising law, generally prohibits advertising that contains "any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." To prove a violation under section 17500, the plaintiff must demonstrate the defendant knew, or in the exercise of reasonable care, should have known, that the advertisement was untrue or misleading. (See *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 224.)

Haas's UCL and false advertising claims are based on the social media posts describing Haas's neglect of Luna and the need to raise funds for her veterinary care, as well as statements in those posts that Little Love Rescue was a nonprofit organization. For the reasons discussed, those statements, although presented in a public forum, did not contribute to the public conversation about a matter of public interest within the meaning of

19

section 425.16, subdivision (e)(3), and are not properly subject to a special motion to strike under that statute.[7]

Because Littleton and Little Love Rescue did not carry their threshold burden under section 425.16, we need not consider whether Haas demonstrated a probability of prevailing on the merits of any of his claims. (See *City of Cotati v. Cashman, supra,* 29 Cal.4th at pp. 80-81; *Shahbazian v. City of Rancho Palos Verdes* (2017) 17 Cal.App.5th 823, 830.)

## DISPOSITION

The order denying the special motion to strike is affirmed. Haas is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.                    FEUER, J.

---

[7] At oral argument counsel for Littleton and Little Love Rescue asserted Haas's UCL claim was based, at least in part, on Little Love Rescue's social media request for legal fees, a statement purportedly made in connection with anticipated litigation and, therefore, properly subject to a special motion to strike under section 425.16, subdivision (e)(2), without a showing it was made in connection with a public issues or an issue of public interest. A contention raised for the first time at oral argument is forfeited. (*In re I.C.* (2018) 4 Cal.5th 869, 888, fn. 5; *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6.; *Gilman v. Dalby* (2021) 61 Cal.App.5th 923, 939.)